UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SFR SERVICES, LLC,

    Plaintiff,

v.                         Case No:  2:19-cv-229-FtM-29NPM

LEXINGTON INSURANCE COMPANY,

    Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on plaintiff's Motion for Partial Summary Judgment, or In The Alternative, To Strike Defendant's Affirmative Defenses (Doc. #52), filed on February 28, 2020.  Defendant filed a Response (Doc. #56) on March 20, 2020. Plaintiff filed a renewed Motion (Doc. #97) on October 13, 2020, to which defendant Responded in Opposition (Doc. #100) on October 27, 2020. For the reasons set forth below, the initial and renewed Motions are granted in part and denied in part.

**I.**

Plaintiff SFR Services, LLC (Plaintiff or SFR) filed a Complaint (Doc. #4) on January 29, 2019 against defendant Lexington Insurance Company (Defendant or Lexington) in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. On April 12, 2019, Defendant removed the action to this Court on the basis of diversity jurisdiction. (Doc. #1.)

In the Complaint, SFR asserts that Lexington breached an insurance policy (the Policy) issued to its assignor[1] Coronado Condominium Owners Association, Inc. (the insured or Coronado) for certain real property located in Fort Myers, Florida. (Doc. #4, ¶¶ 5, 14-16.) The Complaint alleged that on September 9, 2017, the insured's real property sustained storm damage due to Hurricane Irma; that Coronado reported that damage to Defendant; and that Lexington failed to pay as required by the Policy, thus breaching the Policy. (Id., ¶¶ 7-8.)

Defendant filed an Answer to the Complaint which included nineteen affirmative defenses. (Doc. #39.) Plaintiff moves for partial summary judgment, or in the alternative, to strike eleven affirmative defenses (#s 1-4, 6, 8, 9, 12, 13, 16, and 19) due to lack of legal and factual support. (Doc. #57, p. 1; #Doc. #97, p. 2.) Defendant does not oppose striking affirmative defenses numbers 9, 12 through 16, and 19, but remains opposed to striking 1 through 4, 6, 8, and 17.[2] (Doc. #56, p. 2; Doc. #100, p. 2.) Accordingly, the Court strikes affirmative defenses numbers 9, 12

---

[1] On September 19, 2018, Coronado Condominium Owners Association, Inc. executed an Assignment of Insurance Benefits assigning Coronado's "rights, benefits, and proceeds" under the insurance Policy to Plaintiff. (Doc. #4, ¶ 9.)

[2] In its Motion, Plaintiff does not identify affirmative defense seventeen as one of the defenses it seeks to strike. (Doc. #52.) The Court therefore will not address this affirmative defense.

through 16, and 19 from the Answer, and will address the remaining challenged affirmative defenses below.

## II.

### A. Pleading Standard for Affirmative Defenses

Affirmative defenses are subject to the general pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Daley v. Scott, No. 2:15-cv-269-FtM-29DNF, 2016 U.S. Dist. LEXIS 83735, at *3 (M.D. Fla. June 28, 2016). Rule 8(b)(1)(A) requires a party to "state in short and plain terms its defenses to each claim asserted against it," and Rule 8(c) requires a party to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(b)(1)(A) and (c). Compliance with Rule 8(c) requires a defendant to set forth "some facts establishing a nexus between the elements of an affirmative defense and the allegations in the complaint," so as to provide the plaintiff fair notice of the grounds upon which the defense rests. PK Studios, Inc. v. R.L.R. Invs., LLC, No. 2:15-cv-389-FTM-99CM, 2016 U.S. Dist. LEXIS 116057, at *4-5 (M.D. Fla. Aug. 30, 2016) (quoting Daley, 2016 U.S. Dist. LEXIS 83735, at *7). Pursuant to Federal Rule of Civil Procedure 12(f), courts may strike "insufficient defense[s]" from a pleading, either upon a motion or sua sponte. Fed. R. Civ. P. 12(f); PK Studios, Inc., 2016 U.S. Dist. LEXIS 116057, at *4-6.

3

### B. Summary Judgment Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir.

4

1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).

These principles are equally applicable when, as here, the Plaintiff is seeking a partial summary judgment regarding Defendant's affirmative defenses. "[O]n a plaintiff's motion for [partial] summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable." Office of Thrift Supervision v. Paul, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997) (citing Blue Cross and Blue Shield v. Weitz, 913 F.2d 1544, 1552 (11th Cir. 1990)). To do so, "[t]he defending party must rely on or submit record evidence in support of the purported affirmative defenses to create a genuine issue of material fact preventing the entry of summary judgment." Meth Lab Cleanup, LLC v. Spaulding Decon, LLC, No. 8:14-CV-3129-T-30TBM, 2015 U.S. Dist. LEXIS 96259, 2015 WL 4496193, at *7 (M.D. Fla. July 23, 2015) (citation omitted). It is "[o]nly upon such a showing [that] the burden shift[s] to [a] plaintiff regarding that affirmative defense." Paul, 985 F. Supp. at 1470 (citing Weitz, 913 F.2d at 1552 n.13).

### III.

With these standards in mind, the Court turns to the six challenged affirmative defenses.

5

### A. Affirmative Defense One

In its first affirmative defense, Defendant asserts that some of the damages Plaintiff seeks to recover are not covered under the Policy. Specifically, Lexington argues that damages caused by or resulting from any "(1) wear and tear; (2) . . . decay, deterioration; and (4) . . . cracking" are not covered by the Policy but are being sought by Plaintiff. (Doc. #39, p. 5; Doc. #56, p. 5; Doc. #100-1, p. 53.)

Plaintiff argues that this affirmative defense is factually unsupported and should be stricken. Plaintiff points out that Defendant's corporate representative, Mark B. Leventhal, testified that Defendant relied on two expert reports from JS Held in support of its affirmative defenses. (Doc. #97-5, pp. 110-111, 113-117.) Plaintiff argues that these JS Held reports do not definitely state there is damage attributable to wear and tear, corrosion, decay, deterioration, or settling. (Doc. #97, p. 7.) Rather, the reports have minimal conclusions about expansion and shrinking of the hip and ridge caps at the insured property. (Id.) Further, Plaintiff asserts that Defendant's expert Matthew Staffeld confirmed in his deposition that many alleged conditions listed in the first affirmative defense were not observed at the property. (Doc. #97, pp. 7-8; Doc. #97-6, pp. 15-16.)

In support of its first affirmative defense, Defendant argues that there is evidence that the deteriorating condition of the

6

roof's underlayment and wood decking, and the cracked tiles, are from sources other than Hurricane Irma and are not covered under the Policy. (Doc. #56, p. 6; Doc. #100, p. 7.)  This includes: (1) multiple pre-Hurricane Irma "Service Work of Fort Lauderdale, LLC" invoices from 2017, describing repairs made to the insured property's six building roofs due to decaying and deteriorating condition of the membrane/underlayment and rotted plywood (Docs. ##56-3; 56-4; 100-5; 100-6); (2) testimony of the insured's corporate representative, William Cox, that Service Works regularly performed work to repair roof leaks at the insured property prior to Hurricane Irma (Doc. #100-8, p. 8); and (3) the November 22, 2019 JS Held Storm-Focused Assessment Report which points out "multiple examples of faulty inadequate or defective roof construction in the form of underdriven nails and inadequate headlap of the tiles" and cracked tile conditions from foot traffic and golf ball strikes, both of which are unrelated to Hurricane Irma. (Docs. ##56-5; 100-2.)

The Court finds that Defendant has identified sufficient facts to support its first affirmative defense. Paul, 985 F. Supp. at 1468; Meth Lab Cleanup, LLC, 2015 WL 4496193, at *7. The Court further finds there are material disputed facts as to the origin of the alleged damage and whether the damage to the insured property is excluded under the Policy, precluding the grant of summary judgment. Baby Buddies, Inc., 611 F.3d at 1314.

Plaintiff's Motion for Partial Summary Judgment or in the alternative, to Strike Defendant's first affirmative defense, is therefore denied.

### B. Affirmative Defenses Two, Three and Four

Defendant's affirmative defenses two, three, and four relate to the Policy's Cause of Loss – Special Form. This provision excludes insurance coverage for any loss or damage caused by or resulting from any of the following:

> c. Faulty, inadequate or defective:
>
>> (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>>
>> (3) Materials used in repair, construction, renovation or remodeling;
>>
>> (4) Maintenance.

(Doc. #100-1, p. 54; Doc. #39, pp. 5-7; Doc. #56, pp. 7-9.) The affirmative defenses assert that the portion of plaintiff's damages due to faulty or defective conditions are not covered by the Policy. (Doc. #39, pp. 5-7.)

Plaintiff argues there is no factual support to show any claimed damages are due to faulty, inadequate, or defective repairs since Defendant's November 22, 2019 JS Held report states "repairs conducted to the field of the roofs appeared to have been implemented properly." (Doc. #52, p. 8; Doc. #97, p. 8; Doc. #56-5, p. 2.) Plaintiff also argues that Defendant's experts failed to

8

identify any inadequate or defective materials used in the repair, construction or remodeling, or inadequate or defective maintenance. (Doc. #52, p. 8; Doc. #97, pp. 8-9.) In addition, Plaintiff claims that Defendant's expert, Mr. Staffeld, confirmed that many of the alleged conditions listed in the second, third and fourth affirmative defenses were not observed at the insured property. (Id.; Doc. #97-6, pp. 20-22.)

Defendant's position is that the insured property's excessive "uplift" condition on the roof, which Plaintiff claims caused damages during Hurricane Irma, is, in fact, a condition of faulty, inadequate or defective workmanship or construction, and as such, is not covered by the Policy. (Doc. #56, p. 7; Doc. #100, p. 7.) Defendant asserts that a full reading of the November 2019 JS Held report shows spot repairs were feasible, and could be made tight and secure with the use of a polyurethane foam adhesive, but that the "repairs ranged in quality from being readily visible due to poorly aligned and re-set tiles or poorly broken tiles to locations where it could not be known whether repairs were accomplished . . ." (Doc. #56, p. 7; Doc. #56-5, p. 7.) Defendant argues that the JS Held report also identified faulty construction of the roof, such as systematically under-driven fasteners (nails) that allowed for "excessive lift" of more than two inches. (Doc. #56, pp. 6-7; Doc. #56-5, pp. 5-6.)

9

Additionally, Defendant argues that Plaintiff's own expert, Mr. Joseph Butler, described the pre-Hurricane Irma repairs set forth in an August 30, 2017 Service Work invoice as "temporary" and "very much an example of a Band-Aid. Not even the best Band-Aid I've seen in a while." (Doc. #100-9, pp. 18, 23; Doc. #56, pp. 7-8; Doc. #100, pp. 8-9.) Concerning the feasibility of repairing even a single roof tile, Mr. Butler stated in his report that:

> Any attempt to spot repair a damaged concrete tile . . . to a pre-loss condition would likely fail due to the fact the overlying tiles must be externally rotated to access the existing attachment, and the overlying tile is rigid. Even if enough axial force could be applied to the end of the overlying tile to facilitate enough movement to allow the existing broken tile to be replaced, the lifting of the overlying tile would not only jeopardize the attachment of the overlying tile, it would also result in damage to the moisture barrier due to rips and tears as the overlying attachment is pulled from the sheathing.

(Doc. #100-9, p. 50; Doc. #56-7, p. 3; Doc. #56, p. 8.)

Defendant also notes that Mr. Butler criticized the materials used to repair or maintain the insured property, stating that:

> Most of the ones [roof tiles] I found on the roofs, they took what I would describe as Liquid Nails—a caulk gun of adhesive—and put adhesive on the joints. The joints are supposed to move and expand and contract, so that's really a bad thing to do. And they just slid it in there. So they're not attached with a nail, as they originally were, or any kind of use of a patty.
>
> I saw other cases they used—tried to do a mortar patty, and they used, like, Quikrete just right out of a bucket, and put, like, a blob of concrete. It didn't attach. They pick them right up.

(Doc. #100-9, p. 27; Doc. #100, p. 10.) Defendant contends that Mr. Butler's statements establish that the numerous pre-Hurricane Irma spot roof repairs and maintenance performed by Service Works, and the materials used, were faulty, inadequate or defective, and caused damage not only at the repair spot, but necessarily caused collateral damage to multiple overlying roof tiles and the underlying moisture barrier, none of which is covered by the Policy. (Doc. #56, pp. 6-9; Doc. #100, pp. 9-11.)

The Court finds genuine issues of fact exist regarding whether there was inadequate or defective materials used in repairs of the insured property that pre-dated any damage caused by Hurricane Irma, and whether the repairs, construction and maintenance of the property may have been faulty, inadequate or defective. See Scott, 550 U.S. at 380; Meth Lab Cleanup, LLC, 2015 WL 4496193, at *7. Therefore, Plaintiff's Motion as to the second, third, and fourth affirmative defenses is denied.

### C. Affirmative Defenses Six

The sixth affirmative defense alleges the insured violated conditions precedent to recovery under the Policy. (Doc. #39, pp. 9-11; Doc. #56, p. 9.) Specifically, Defendant asserts that the insured did not satisfy certain pre-loss conditions when it failed to: (1) provide claim information and documentation; (2) submit a timely or properly signed sworn proof of loss; and (3) provide documents needed for the examination under oath (EUO) and appear

11

on the date of the scheduled EUO. (Doc. #39, pp. 10-11; Doc. #100-1, pp. 45-46; Doc. #56, pp. 9-10; Doc. #100, pp. 11-15.) Defendant contends that as Coronado's assignee, Plaintiff is only entitled to payment if Coronado has complied with its obligations under the Policy. Defendant thus claims it owes no further amount on Plaintiff's claim due to Coronado's failure to comply with the Policy conditions. (Doc. #39, pp. 10-11.)

Plaintiff asserts that this affirmative defense is not well-founded. Plaintiff argues Defendant has admitted that prior to Plaintiff filing this suit on January 29, 2019, Defendant had only made limited document requests to the insured, which did not prejudice the adjustment of the claim[3] (Doc. #52, p. 9); that Defendant's January 16, 2019 letter to Plaintiff's counsel, who did not represent the insured, is not a valid request for the

---

[3] On July 6, 2020, the Court issued an Opinion and Order denying Defendant's Motion for Summary Judgment, finding that: 1) Plaintiff failed to raise an issue of fact as to whether Defendant waived its right to request that Coronado produce documents relevant to the assigned claim; 2) Plaintiff, as assignee of Coronado, is subject to the Policy's conditions precedent to filing suit; 3) Plaintiff failed to file the present lawsuit in accordance with the Policy's conditions precedent to suit given that it initiated the action prior to Defendant's receipt of the insured's sworn proof of loss and requested documents; 4) an insurer must be prejudiced by the insured's non-compliance with a post-loss obligation in order for the insured to be barred from filing suit; and 5) while no prejudice resulted when Defendant did not obtain Coronado's sworn proof of loss, the Court did not have sufficient information to determine whether Defendant was prejudiced by not receiving other documents it requested from Coronado on January 16, 2019. (Doc. #93.)

insured to produce documents or proof of loss (Doc. #97, p. 11); that Defendant was not prejudiced when it failed to receive a sworn proof of loss from the insured because Defendant has received Plaintiff's proof of loss which framed the instant claim (Id., p. 12); and that Defendant was not prejudiced regarding its request that the insured appear for an EUO, as this was made on March 29, 2019, after Plaintiff filed suit on January 29, 2019. (Id., pp. 11-12.)

Defendant responds that on January 16, 2019, not only did it send a letter to Plaintiff, but also to Coronado, requesting a history of repair invoices, board meeting minutes, and other documents that would provide information about the condition of the insured property's roof. (Doc. #100, p. 12.) Defendant states that it did not receive many of the insured's records until almost one year after its initial request, which prejudiced Defendant because the evidence of roof leaks, installation of non-matching tiles, and deteriorating roof components would have substantially affected its investigation. (Id., pp. 13-14.) Consequently, Defendant argues it was irreversibly prejudiced because it was unable to investigate the loss and determine the damages that pre-existed Hurricane Irma and might be excluded under the Policy. (Id., pp. 14-15.)

While it is undisputed that the insured belatedly produced requested documentation, the Court finds that reasonable minds may

differ on the inferences to be drawn with respect to whether the untimely submission prejudiced Defendant by preventing determination of which damages are attributable to sources other than Hurricane Irma. This precludes granting Plaintiff's Motion as to the sixth affirmative defense. St. Charles Foods, 198 F.3d at 819. Accordingly, neither summary judgment nor striking the sixth affirmative defense is appropriate.

### D. Affirmative Defense Eight

In its eighth affirmative defense, Defendant points to a Policy provision which states:

4. Loss Payment

    a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

        (1)  Pay the value of the lost or damaged property;

        (2)  Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

        (3)  Take all or any part of the property at an agreed or appraised value; or

        (4)  Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

(Doc. #100-1, p. 46; Doc. #39, pp. 14-15.) Defendant emphasizes that the roofs at the insured property already had tiles that did not match from repairs made prior to Hurricane Irma.[4] Because of

---

[4] Defendant notes that the November 22, 2019 JS Held report states "the tile roof systems as discussed above included utilization of various colored tiles, some of which matched in

the mis-matched roof tiles, Defendant argues that replacing "the property with other property of like kind and quality" means the Policy does not require that the tiles used to repair the roofs match the other tiles on the building, or that the tiles on different buildings match the tiles of other buildings at the insured property. (Doc. #39, p. 15.) Finally, Defendant contends that under Vazquez v. Citizens Prop. Ins. Corp., 44 Fla. L. Weekly D2578 (Fla. 3d DCA Oct. 23, 2019), op. withdrawn and substituted at 45 Fla. L. Weekly D642 (Fla. 3d DCA March 18, 2020), the cost of matching tiles is not relevant or recoverable when repairs have not been made such that recovery is for actual cash value only.

Plaintiff argues Defendant's eighth affirmative defense does not address matters set forth in the Complaint, but instead "bafflingly discusses replacing property with 'like kind and quality' and whether the Policy requires installation of matching tiles." (Doc. #52, pp. 13-14; Doc. #97, pp. 13-14.) Plaintiff contends Defendant also waived its assertion that "recovery is for actual cash value only" when it provided two replacement cost value estimates, and not actual cost value estimates. (Doc. #52, p. 14; Doc. #97, p. 14.)

---

size and configuration[,] and others were slightly larger in size and did not allow for proper sidelock integration." (Doc. #56-5, p. 2; Doc. #56, pp. 11-12; Doc. #100, p. 15.)

Contrary to Plaintiff's assertion, Defendant argues that the issue of recoverable repair costs for the insured property's roofs and the type of roofing tiles permitted to be used for repairs are at the heart of this litigation. Defendant notes that Plaintiff has relied upon Section 706.1.1 of the Florida Building Code—Existing Buildings that states:

> Not more than 25 percent of the total roof area or roof section of any existing building or structure shall be repaired, replaced or recovered in any 12 month period unless the entire existing roofing system or roof section is replaced to conform to the requirements of this code.

(Doc. #56, p. 11; Doc. #100, p. 16.) According to Defendant, Plaintiff's expert concluded that all but one of the insured property's twenty roofs require repairs of more than 25 percent of the roof area, which has led Plaintiff to seek total replacement of all the roofs. (Doc. #56, p. 11; Doc. #100, p. 16.) Defendant's expert, however, disagrees with this assessment, finding only between two and four percent of the roofs were damaged by Hurricane Irma. (Id.) Defendant thus contends that it is possible a jury will find damages from the repairs are under 25 percent and, if so, the issue of matching may be raised. Accordingly, Defendant asserts it has a right to preserve its arguments on this issue. (Id.)

With respect to waiving its assertion that "recovery is for actual cash value only," Defendant asserts no such waiver occurred

when it requested two estimates for repairs, one pursuant to JS Held's scope of repairs, and the other with Plaintiff's scope of repairs. (Doc. #56, p. 12; Doc. #100, p. 17.) Rather, Defendant contends it is the function of its adjusters, claims analysts, and estimators to present the appropriate actual cash value consistent with the terms and conditions of the Policy. (Id.)

The Court finds that Defendant has established a sufficient nexus between its eighth affirmative defense and the allegations of the Complaint, thus providing Plaintiff fair notice of the grounds upon which the defense rests. PK Studios, Inc., 2016 U.S. Dist. LEXIS 116057, at *4-5. The Complaint generally alleges that the "Carrier has refused to pay for all covered damages to the Insured Property, despite such payment being required by the Policy" and in doing so, has breached the insurance contract. (Doc. #4, pp. 2-3.) It is undeniable that "all covered damages" under the terms of the Policy may relate to numerous conditions of the insured property, one of which appears to be replacement of damaged roof tiles. Given that the Policy permits Defendant, at its option, to repair, rebuild or replace damaged property "with other property of like kind and quality," the Court finds this affirmative defense applies to the Complaint, and more specifically, covered damages. Therefore, to the extent Plaintiff is requesting the Court strike Defendant's eighth affirmative defense for failing to comply with Rule 8 standards, the Court denies such a request.  The Court also

17

finds that there is a genuine dispute as to material facts regarding the repair or replacement of the roof tiles, and to what extent or in what manner this would be covered under the Policy.

Lastly, the Court is unpersuaded by Plaintiff's argument that because Defendant provided two replacement cost value estimates, Defendant waived its assertion that "recovery is for actual cash value only." Plaintiff has not cited any supporting authority for why waiver would be warranted in this case. "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." Cent. Transp., LLC v. Glob. Aeroleasing, LLC, No. 1:17-cv-23788-GAYLES, 2020 U.S. Dist. LEXIS 90862, at *14 (S.D. Fla. May 25, 2020)(citing Pelfresne v. Vill. of Williams Bay, 917 F.2d 1017, 1023 (7th Cir. 1990)). Plaintiff's Motion for Partial Summary Judgment, or alternatively, to Strike Defendant's eighth affirmative defense is thus denied.

Accordingly, it is now

**ORDERED**:

1. Plaintiff's Motion (Doc. #52) and Renewed Motion (Doc. #97) for Partial Summary Judgment, or in the alternative, to Strike Defendant's Affirmative Defenses, are **GRANTED** as to numbers 9, 12 through 16, and 9, and are **DENIED** as to numbers 1 through 4, 6, and 8.

18

2. Defendant's Affirmative Defenses 9, 12 through 16, and 19 are **STRICKEN** from the Answer and Affirmative Defenses.

**DONE** AND **ORDERED** at Fort Myers, Florida, this __18th__ day of December, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record